IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FONDA GAIL TRUDGEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 20-735 |
| ANDREW M. SAUL, *Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 31st day of August 2021, the Court, having considered the motions for summary judgment filed by Plaintiff and the Commissioner of Social Security ("Commissioner"), will grant the Commissioner's motion except as to costs.[1] The agency's final decision denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence. Accordingly, it shall be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("[W]e must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record.").[2]

---

[1]     The Commissioner asks that costs be taxed against Plaintiff without advancing any argument to support that request. Therefore, that request will be denied without further consideration. *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

[2]     Plaintiff filed an application for SSI benefits on October 6, 2016, alleging disability due to spinal stenosis, degenerative disc disease, and mental health impairments. (R. 204). The Administrative Law Judge ("ALJ") determined that while Plaintiff suffered from three severe, medically determinable impairments—cervical and lumbar degenerative disc disease, bipolar disorder, and history of substance abuse disorder—she nevertheless maintained the ability to perform a reduced range of medium work. (R. 46). The ALJ further found that jobs were available to an individual of Plaintiff's same work capacity, age, education, and work

experience, meaning she was not disabled under the Act. (R. 50—51). Plaintiff argues that the ALJ's decision is not supported by substantial evidence. She specifically challenges the ALJ's residual functional capacity ("RFC") determination, her reliance on allegedly incomplete testimony offered by the vocational expert ("VE"), and the Appeals Council's refusal to consider evidence Plaintiff submitted after the ALJ's decision. Contrary to Plaintiff's contentions, the Court detects no shortcomings in the ALJ's decision and will affirm it.

Plaintiff alleges several issues regarding the ALJ's RFC determination. She generally argues that the RFC's component findings are unsupported by substantial evidence. For instance, she contends that, contrary to what the ALJ found, the evidence shows she is not capable of standing and walking as much as medium work demands. She also argues the ALJ's analysis indicates that she rejected Plaintiff's subjective complaints of pain without a rational basis and despite objective medical evidence that corroborated the complaints. She further argues that the ALJ failed to afford appropriate weight to her nurse practitioner's opinion that she was disabled and the consultative examiner's ("CE") opinion that she could only stand and walk for four hours each day.

An ALJ's finding as to a claimant's RFC must be supported by "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To that end, an ALJ must "set forth the reasons for his [or her] decision . . . because conclusory statements are 'beyond meaningful judicial review.'" *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010) (citing *Cotter v. Harris*, 642 F.2d 700, 704—705 (3d Cir.1981); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)). Explaining the bases of their decisions, ALJs must show how they resolved "conflict[s] created by countervailing evidence." *Mason*, 994 F.2d at 1064 (*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)).

Evidence that ALJs consider includes "anything [the claimant] or anyone else submits . . . or that [the ALJ] obtain[s] that relates to [the claimant's] claim." 20 C.F.R. § 416.913(a). One kind of evidence the ALJ receives is evidence from "nonmedical source[s]," including the claimant herself. *Id.* § 416.913(a)(4). When an ALJ considers a claimant's own representation of her symptoms, the ALJ first must determine whether a medically determinable impairment could cause such symptoms. 20 C.F.R. § 416.929(a) ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged[.]"). Then the ALJ seeks to determine the "intensity and persistence of [the claimant's] symptoms, including pain" by reference to "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements." *Id.* Next, the ALJ considers how the claimant's symptoms affect functionality and how to reflect established functional limitations in the claimant's RFC. *Id.* While the claimant's initial representation of her symptoms is a weighty consideration in this analysis, the ALJ is free to reject the claimant's allegations as long as the ALJ "affirmatively addresses the issue in [the] decision, specifies [the] reasons for rejecting

2

them, and where [the] conclusion is supported by the record." *Duncan v. Sullivan*, 786 F. Supp. 466, 470 (E.D. Pa. 1992).

ALJs must also consider every medical opinion in the record. 20 C.F.R. § 416.927(c). Their consideration of medical opinion evidence is guided by a number of factors, including the examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 416.927(c)(1)—(6). Treating source medical opinions that pertain to benefits applications filed before March 27, 2017 may be afforded "controlling weight." *Id.* § 416.927(c)(2) (explaining that where the ALJ finds that a "treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight."). Controlling weight is not a floor but a ceiling, therefore, ALJs may afford such opinions less than controlling weight when they explain the basis for doing so and cite contrary medical evidence that supports the decision. *Jones v. Sullivan*, 954 F.2d 125, 128—29 (3d Cir. 1991).

The Court first addresses Plaintiff's argument that the ALJ failed to appropriately consider her testimony toward the RFC determination. Plaintiff argues that there is "overwhelming" evidence in the record that substantiates her complaints of severe pain. (Doc. No. 17, pg. 25). She points to evidence in the record that she suffered from cervical and lumbar spinal impairment as early as 2006 and that she only avoided strong pain medicines because of addiction concerns. (Doc. No. 17, pg. 26). Contrary to Plaintiff's contentions, the ALJ appropriately considered her representation of pain and other symptoms.

The ALJ acknowledged that Plaintiff alleged "low back pain with radiation into the bilateral hips and left lower extremity." (R. 46). The ALJ also noted that Plaintiff alleged "limitations in sitting, standing, walking, lifting, [and] performing postural maneuvers" in her Function Report, and that Plaintiff addressed her pain by lying down or taking naps during the day. (R. 46—47). Next, the ALJ considered whether Plaintiff's complaints were consistent with objective medical evidence in the record. Here, the ALJ determined that "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms," but not to the "intensity, persistence and limiting effects" she suggested. (R. 47). The ALJ supported that finding by reference to the objective medical evidence that led her to it. She noted that while Plaintiff demonstrated "mild cervical and lumbar tenderness" during physicals, she was not in "acute distress." (R. 47). Later records continued to indicate that Plaintiff was not in "acute distress" and "[c]ontemporaneous imaging studies reveal[ed] only disc bulging at L5-S1 without nerve root effacement, foraminal narrowing, or spinal stenosis." (R. 47). At the consultative examination, Plaintiff indicated that her low back pain was "intermittent [and] nonradiating . . . at a 3/10 level." (R. 47). With this analysis, the ALJ satisfied what is required of ALJs when they assess claimants' subjective complaints. To the extent the ALJ did not totally credit Plaintiff's allegations of pain, she "affirmatively address[ed] the issue" and identified her reasons as well as evidence in the record that supported her conclusion. *Duncan*, 786 F. Supp. at 470.

3

The Court is similarly satisfied with the ALJ's consideration of the medical opinion evidence in the record.  Plaintiff contests the ALJ's rejection of her mental health treatment provider's responses on two Pennsylvania Department of Public Welfare Employability Assessments—dated August 26, 2016 and August 15, 2017—and the ALJ's consideration of the CE's opinion.  (Doc. No. 17, pg. 16).  Plaintiff's mental health treatment provider, Nurse Practitioner DeCicco, completed the two Public Welfare forms.  On the first, she checked a box to indicate that Plaintiff was temporarily disabled between August 26, 2016 and June 30, 2017, citing Plaintiff's bipolar disorder and clinical history but providing no further explanation.  (R. 407).  On the second, Nurse Practitioner DeCicco checked the box indicating Plaintiff was permanently disabled, again citing her mental health impairment—"Bipolar depressed F31.32"—but lacking further support or explanation.  (R. 439).  The ALJ cited multiple reasons why she would only afford the view Nurse Practitioner DeCicco expressed on these forms "little weight." (R. 48).  First, she found the 2016 opinion was based on a "brief initial clinical encounter" (R. 48).  She also found both opinions were "conclusory" without "supportive objective findings."  (R. 48).  She further remarked that opinions concerning a claimant's "employability are an issue reserved to the Commissioner."  (R. 49).

The Court finds that these were adequate bases for not affording Nurse Practitioner DeCicco's opinions greater weight.  That opinion evidence is "conclusory and unsupported by the medical evidence" is an appropriate reason to afford it lesser weight than it would otherwise receive.  *Jones*, 954 F.2d at 129.  It is also well-established that when medical providers opine on ultimate issues like whether or not a claimant is "disabled," such pronouncements are not considered "medical opinions" insofar as the opinion goes to an issue "reserved to the Commissioner."  20 C.F.R. § 416.927(d).

As to the CE's opinion, the ALJ explained that she would afford the views expressed by the CE "little weight" because the CE's opinion that Plaintiff could only stand and walk for four total hours in an eight-hour workday was not based on the CE's "objective findings," but on "face-value acceptance of the claimant's subjective complaints of mild, intermittent, nonradiating low back pain."  (R. 49).  The CE's report confirms that while she opined significant limitations concerning Plaintiff's ability to stand and walk, the CE observed Plaintiff to have a normal gait, full squat, normal stance, and no difficulty in walking on heels and toes.  (R. 418).  Thus, the ALJ's basis for not affording the CE's opinion greater weight is not "wrong."  *Cotter*, 642 F.2d at 706 (explaining that an "ALJ cannot reject evidence for no reason or for the wrong reason.").

Plaintiff argues that there is additional evidence in the record that contradicts the ALJ's consideration of the opinion evidence.  She points out that Nurse Practitioner DeCicco found she could not "work off the farm" due to her anxiety, panic, and fear.  (Doc. No. 17, pg. 16 (citing R. 441)).  At that time, however, Nurse Practitioner DeCicco also found Plaintiff had a GAF score of 54—demonstrative of only a moderate psychosocial impairment—and noted that Plaintiff's appearance, eye contact, and activity were all average or within normal limits.  (R. 444).  She further noted that Plaintiff was cooperative, her thought process was logical, and that her thought

4

content, cognition, insight, and judgment were within normal limits. (R. 444). The ALJ did not ignore Nurse Practitioner DeCicco's negative findings, acknowledging that Plaintiff was noted to have mood and affect disturbances "ranging between depressed, anxious, euthymic, and constricted." (R. 48). And the Court is satisfied with the ALJ's resolution of conflicting evidence as her decision is both well explained and supported by substantial evidence. While it is true that the ALJ did not "reference every relevant treatment note," that level of detail is not required. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

Plaintiff additionally suggests that the ALJ mischaracterized the record insofar as she found Plaintiff received no treatment from "an orthopedist, neurologist, or pain specialist during the relevant period." (Doc. No. 17, pg. 18 (citing R. 47)). She argues that she alleged her disability began in August 2010 and identifies multiple appointments with a neurosurgeon and pain management appointments between 2010 and the date of decision. Plaintiff's premise here is flawed because though she alleged disability beginning in 2010, she did not file her SSI application until October 6, 2016. (R. 42). The relevant time period for SSI begins once the application is filed. *Elkins v. Saul*, No. 2:20-CV-00410, 2021 WL 1823346, at *6 (S.D.W. Va. Apr. 16, 2021), report and recommendation adopted, No. 2:20-CV-00410, 2021 WL 1820689 (S.D.W. Va. May 6, 2021) (citing 20 C.F.R. § 416.202(g)). As was appropriate, the ALJ considered evidence that predated the beginning of the relevant time period to the extent that it reflected Plaintiff's alleged disability during that time. *See Peresolak v. Astrue*, No. 2:12CV921, 2013 WL 5302292, at *5 (W.D. Pa. Sept. 19, 2013). However, she was correct in excluding those records from her description of Plaintiff's treatment *during* the relevant time period.

At the most general level, Plaintiff argues substantial evidence does not support the ALJ's RFC findings. In addition to the arguments the Court has already addressed, Plaintiff argues it was inappropriate for the ALJ to rely on the State Agency psychologist's opinion because her Nurse Practitioner's 2017 opinion that she was permanently disabled was not available for review at that time. She also points out diagnostic testing and Plaintiff's history of being prescribed strong narcotic medication as evidence that her musculoskeletal problems would keep her from performing medium work. The Court is nevertheless satisfied that the ALJ's RFC determination is supported by substantial evidence. That the State Agency psychologist's opinion was rendered before other evidence became available does not mean the ALJ was prohibited from affording it substantial weight. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Further, "State agent opinions merit significant consideration," because State agents are so familiar with Social Security disability programs. *Id.* Further, the ALJ's consideration of the evidence as a whole is satisfactory. (R. 47). The ALJ considered evidence supporting Plaintiff's alleged limitations, like diagnostic imaging, but adequately explained why other evidence in the record—including objective medical evidence, opinion evidence, and activities of daily living—supported a finding that Plaintiff was capable of medium work. (R. 47—48). The Court is assured that a reasonable

5

person would be satisfied by the evidence the ALJ cited in support of the RFC determination. *See Mason*, 994 F.2d at 1064.

Plaintiff next argues that the ALJ relied on incomplete VE testimony to determine that work remained available to her. At Plaintiff's hearing, the VE indicated that employers would only tolerate up to one absence per month and 10% off-task time daily. She argues that her mental health impairments combined with needing to lie down an hour per day for pain indicate she would exceed the maximum number of permitted absences and allowable off-task time. The Court is not convinced. ALJs must indeed ensure that they "accurately portray[] the claimant's individual physical and mental impairments" to the VE. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). However, providing an accurate portrayal of a claimant's impairments means "accurately convey[ing] to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). In this matter, the ALJ did not find more than one monthly absence and more than 10% off-task time were established by the evidence, which is evident because corresponding limitations are not included in the RFC. The Court has determined that the RFC is supported by substantial evidence and should not be disturbed. It follows that the ALJ's presentation of Plaintiff's limitations to the VE was appropriate and the resultant testimony, reliable.

Finally, Plaintiff argues that the Appeals Council erred in refusing to consider opinion evidence that was submitted after the ALJ's decision. Plaintiff argues that the supplemental opinion evidence supports a finding that Plaintiff could only perform sedentary work and that the opinions are reflective of her limitations during the relevant time period. Commissioner correctly points out that by the time Plaintiff submitted that additional evidence, the record had closed, so the Court may only consider it to determine whether remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g). *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). As the Third Circuit has explained:

> No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ. Instead, the Act gives the district court authority to remand the case to the Commissioner, but only if the claimant has shown good cause why such new and material evidence was not presented to the ALJ.

*Id.* Commissioner further argues that Plaintiff failed to demonstrate what good cause she had for failure to present the late-filed evidence to the ALJ. Plaintiff, in turn, argues that "the fact that [the opinions submitted to the Appeals Council] did not exist prior to the ALJ decision is good cause for why they were not submitted earlier." (Doc. No. 21, pg. 23).

The Court is not persuaded that constitutes good cause for failure to submit the evidence earlier. One of the records was signed by Dr. Galonski and Nurse Practitioner DeCicco from the Family Counseling Center of Armstrong County. Nurse Practitioner DeCicco's relationship with Plaintiff dates back to 2016. Plaintiff fails to explain why that opinion or the other late filed

6

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED in part and DENIED in part, as specified above.

/s Alan N. Bloch
United States District Judge

ecf:     Counsel of Record

---

evidence—a physical capacity evaluation referring to a functional capacity evaluation from Dr. McCann and Damon Formaini, MPT—could not have been submitted earlier. In fact, on its face this evidence indicates Plaintiff's counsel referred her for the functional capacity evaluation on April 3, 2019, more than three months after the ALJ's decision in this matter. (R. 51). The mere fact that evidence did not exist at the time of the hearing is not good cause for failure to timely obtain and file such evidence before the ALJ. *See Stover v. Comm'r of Soc. Sec.*, No. CV 16-1265, 2017 WL 3190724, at *4 (W.D. Pa. July 27, 2017). Accordingly, for the reasons explained herein, the Commissioner's final decision shall be affirmed.